UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| METZLER ASSET MANAGEMENT GMBH and ERSTE-SPARINVEST KAPITALANLAGEGESELLSCHAFT MBH, on Behalf of Themselves and All Other Similarly Situated Parties, <br><br> Plaintiffs, <br><br> v. <br><br> STUART "TONY" A. KINGSLEY, GEORGE A. SCANGOS, PAUL C. CLANCY, and BIOGEN, INC., <br><br> Defendants. | Civil Action No. 16-12101-FDS |

### MEMORANDUM AND ORDER ON MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

**SAYLOR, J.**

This is a putative class action involving alleged violations of the Securities Exchange Act of 1934. The Electrical Workers Pension Fund, Local 103, International Brotherhood of Electrical Workers brought suit, on behalf of a class of similarly situated persons, against Biogen, Inc., and two Biogen employees. The complaint contends that class members were harmed when they purchased Biogen securities at prices that were artificially inflated by the company's false and misleading statements about its products. This action raises issues similar to those raised in *In re Biogen Inc. Securities Litigation*, No. 1:15-cv-13189 (D. Mass.) (*Biogen I*), which this Court dismissed on June 23, 2016. *See Biogen I*, 2016 WL 3541538. An appeal of that action is currently pending in the First Circuit.

Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), three putative class members (or groups)—Metzler Asset Management GmbH and Erste-Sparinvest Kapitalanlagegesellschaft mbH ("Metzler"); the City of Miami Fire Fighters' and Police Officers' Retirement Trust ("City of Miami"); and Frankfurt-Trust Investment GmbH and Frankfurt-Trust Investment Luxemburg AG ("Frankfurt-Trust")—have each moved to be appointed as lead plaintiff and to approve of their selection of lead counsel. Frankfurt-Trust has also moved to stay this litigation pending resolution of the appeal of *Biogen I*.

For the reasons set forth below, Metzler's motion will be granted, and the motions of the City of Miami and Frankfurt-Trust will be denied. Frankfurt-Trust's motion to stay will be denied without prejudice.

## I. Background

Unless otherwise noted, all facts are stated as set forth in the complaint.

Biogen is a biopharmaceutical company that develops therapies for neurological, autoimmune, and hematologic disorders. (Compl. ¶ 2). The company's products include prescription medicines used to treat, among other things, multiple sclerosis. (*Id.*). Biogen is based in Cambridge, Massachusetts. (*Id.* at ¶ 36).

One of Biogen's products is the drug Tecfidera, which was approved by the Food and Drug Administration in 2013 for use in treating multiple sclerosis ("MS"). (*Id.* at ¶ 2). Tecfidera was the main driver of Biogen's revenues in 2014 and 2015. (*Id.* at ¶ 3). Biogen emphasized the importance of Tecfidera in its October 22, 2014 Form 10-Q, stating that its "current revenues depend upon continued sales of our principal products," including Tecfidera. (*Id.*).

In the spring of 2014, the MS Institute at Shepherd Center in Atlanta, Georgia—a leading prescriber of Tecfidera in the United States—began monitoring patients taking Tecfidera for

possible side effects. (*Id.* at ¶ 4). The Center observed that patients on Tecfidera were at an elevated risk of developing low lymphocyte counts. (*Id.*). Lymphoctyes are a subtype of white blood cells necessary for proper immune system functioning. (*Id.*).

Between April and June of 2014, Biogen was aware that the Center was reducing its Tecfidera prescriptions. (*Id.* at ¶ 6). In August 2014, the medical director of the Center notified Biogen that Tecfidera was causing low lymphocyte counts among approximately 30% of its MS patients taking the drug. (*Id.* at ¶ 5). At that time, the Center stopped prescribing Tecfidera altogether, and made Biogen aware of its decision to do so. (*Id.* at ¶ 7).

According to the complaint, Biogen did not disclose those developments regarding Tecfidera to the public, but rather continued to highlight the drug's safety and growing sales. (*Id.* at ¶ 8). On October 22, 2014, Biogen did publicly disclose that an MS patient who had taken Tecfidera for four and a half years had died of progressive multifocal leukoencephalopathy ("PML"), an infection caused by a virus that is dangerous for individuals with weakened immune systems. (*Id.* at ¶ 9). After that announcement, Biogen continued to promote the safety of Tecfidera and its increasing prescription numbers, and, in January 2015, stated that it would continue to be a major business driver for the company. (*Id.* at ¶¶ 10, 14).

On April 24, 2015, Biogen disclosed that the PML death was having some effect on Tecfidera sales, stating that new patients were being put on the drug at a slower rate than before. (*Id.* ¶ 17). The next month, it stated that fallout from the PML death was contained, and that doctors' beliefs about the safety of the drug were back to where they had been before the PML death. (*Id.* ¶ 19).

On July 24, 2015, Biogen announced that it was cutting its revenue guidance in half, "based largely on revised expectations for the growth of Tecfidera." (*Id.* at ¶ 26). Biogen's

stock price, which had closed at $385.05 per share on July 23, 2015, closed at $300.03 per share on July 24. (*Id.* at ¶ 26).

On October 20, 2016, the Electrical Workers Pension Fund, Local 103, International Brotherhood of Electrical Workers filed a complaint on behalf of all purchasers of Biogen's publicly traded securities between July 23, 2014, and July 23, 2015. The complaint contends that Biogen and the individual defendants violated federal securities law by making false and misleading public statements concerning Biogen products.

On December 23, 2016, Metlzer, the City of Miami, and Frankfurt-Trust each moved to be appointed lead plaintiff and to approve their selection of lead counsel. Frankfurt-Trust also moved to stay the proceeding pending resolution of *Biogen I*.

## II. **Legal Standard**

The Private Securities Litigation Reform Act ("PSLRA") sets forth detailed procedures for bringing and maintaining securities class actions. The provisions are intended to increase the chances that securities fraud cases are brought by investors who have substantial and genuine interests in the litigation. *See In re Party City Sec. Litig.*, 189 F.R.D 91, 103 (D.N.J. 1999) ("Specifically, the [PSLRA] provides a method for identifying the plaintiff or plaintiffs who are mostly strongly aligned with the class of shareholders, and most capable of controlling the selection and activities of counsel.")

Under the PSLRA, a plaintiff seeking to represent a class must provide a sworn certification at the time the complaint is filed that:

(1) states that plaintiff has reviewed and authorized the complaint;

(2) states that plaintiff did not purchase the security at issue in the complaint at the direction of counsel or in order to participate in a lawsuit;

(3) states that plaintiff is willing to serve as a representative party and participate in trial;

4

(4) sets forth all of plaintiff's transactions involving the security that is the subject of the complaint during the class period;

(5) identifies any other action filed in the previous three years in which plaintiff has sought to be a class representative; and

(6) states that plaintiff will not accept payment for being the representative party, beyond a pro rata share of the recovery, without court approval.

15 U.S.C. § 78u-4(a)(2).

A plaintiff who brings such an action must, within 20 days of filing the complaint, publish notice of the pendency of the class action in a widely-circulated, national business-oriented publication or wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any other person or group of persons who are members of the putative class may apply to the court to be appointed as lead plaintiff in the action, whether or not they have filed a complaint. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II).

Once the 60-day period following publication of notice has run, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff in any such action is the person or persons that:

(1) has either filed the complaint or made a motion in response to notice by the party who filed the complaint;

(2) has the largest financial interest in the relief sought by the class; and

(3) otherwise satisfies the requirements of Fed. R. Civ. Proc. Rule 23.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may only be rebutted upon proof by a member of the purported class that the person identified as the most adequate plaintiff either will

not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## III. Analysis

### A. Presumed Lead Plaintiff

Under the PSLRA, the Court must presume that the lead plaintiff is the person, or group of persons, who (1) filed the complaint or made a motion to be lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, Metzler meets all statutory requirements that govern the Court's choice of presumed lead plaintiff. Although Metzler did not file the complaint, it did make a motion to be lead plaintiff. The plaintiff that did file the complaint—Electrical Workers Pension Fund—did not move to be lead plaintiff.

As to the second factor, Metzler appears to have the largest financial interest of any other person or group of persons in the relief sought. Metzler has alleged total losses of approximately $4,869,544 on their purchases of Biogen securities. Frankfurt-Trust has alleged total losses of approximately $1,520,055, and the City of Miami has alleged losses of $1,388,498. Metzler is, by a substantial margin, the person or group of persons with the largest financial interest in the relief sought.

At oral argument, Frankfurt-Trust contended that, while it did not have the largest total interest in the relief sought, it did have the largest individual fund loss. That, however, is not the standard set forth in 15 U.S.C. § 78u-4(a)(3)(B)(iii). It appears to be undisputed that Metzler is the person or group with the largest *total* financial interest in the relief sought.

Finally, Metzler otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, at least for the purposes of the present motion. Rule 23 provides that a party may serve as a class representative only if four requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009). These findings need only be "preliminary." *Id.*

At this stage of the suit, both requirements are sufficiently met. As a preliminary matter, Metzler's claims appear to be typical of the putative class's claims, in that they arise from the same course of events, and involve the same legal theory as to the claims of the rest of the class. *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001). Metzler also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that it possesses "common interests and an absence of conflict with the class members and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation." *Id.*

Thus, Metzler is the presumed lead plaintiff. That presumption may only be rebutted upon proof by a member of the purported class that the Metzler either will not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof has been presented here. Metzler's motion to be appointed lead plaintiff is therefore granted.

### B. Choice of Counsel

Pursuant to § 21D(a)(3)(B)(v) of the Exchange Act, the presumptive lead plaintiff may select and retain counsel to represent the purported plaintiff class. 15 U.S.C. §77u-4(a)(3)(B)(v). Lead plaintiff's choice of counsel is subject to approval by the court. *Id.*

Metzler has chosen the law firm of Motley Rice to serve as lead counsel for the proposed class. This Court is aware of no reason why it should not approve of Metzler's choice. It appears that the firm has successfully handled a number of shareholder and securities class actions. Accordingly, the Court will approve of Metzler's selection of Motley Rice as lead counsel.

## IV. Conclusion

For the reasons stated above, the motion of Metzler Asset Management GmbH and Erste-Sparinvest Kapitalanlagegesellschaft mbH to be appointed lead plaintiff and to approve its choice of lead counsel (Docket No. 12) is GRANTED.

The motion of the City of Miami Fire Fighters' and Police Officers' Retirement Trust to be appointed lead plaintiff and to approve its choice of lead counsel (Docket No. 18) is DENIED.

The motion of Frankfurt-Trust Investment GmbH and Frankfurt-Trust Investment Luxemburg AG to be appointed lead plaintiff and to approve its choice of lead counsel (Docket No. 21) is DENIED, and its motion to stay the litigation is DENIED without prejudice.
**So Ordered.**

Dated: February 1, 2017

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge